## Crowley et al. v. Ballard et al.

June 23, 1939.

M. L. Blackwell, Judge.

J. M. Rayburn and Fox & Gordon for appellants.

Garret L. Withers for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellees and plaintiffs below, M. F. Ballard and his surviving children (his wife being deceased),

filed this equity action in the Webster circuit court against appellant and one of the defendants below, A. C. Crowley, and two of M. F. Ballard's grandchildren, one of whose parents was an heir of his deceased wife. The petition sought a sale for division of a tract of land in Webster county containing between 25 and 30 acres, in which plaintiffs claim to own a three-fourths undivided interest, and that the other one-fourth interest belonged to defendant and appellant A. C. Crowley. The latter answered the petition and denied that any of the plaintiffs, or either of his co-defendants, owned any interest in the tract of land sought to be sold; but that on the contrary he was the exclusive owner of it. He made his answer a cross petition against all other parties to the action and sought a judgment declaring him to be the sole owner of the involved land. Following pleadings made the issues and proof was taken by depositions by both sides when the cause was submitted, followed by a judgment sustaining the prayer of plaintiffs' petition and dismissing A. C. Crowley's cross petition. It ordered the land sold by the master commissioner and the net proceeds divided among the parties as set out in the petition—the defendant A. C. Crowley receiving one-fourth thereof—and from that judgment he and his wife prosecute this appeal.

The record discloses that sometime between the years 1870 and 1875 one Sebron Crowley died the owner of a tract of land in Webster county, which, as recited in his deed, contained only 80 acres, but which the proof in this case (without contradiction) shows contained between 90 and 95 acres. He died intestate leaving surviving him four infant children (one of whom was A. C. Crowley) and his widow. She and her children continued to occupy the land for some years when she married a man by the name of Keystone, and he and his wife and her children continued to occupy the entire tract without any assignment of the widow's rights therein. In the meantime the plaintiff M. F. Ballard purchased the interest of two of the Crowley heirs after they became of age, which gave him a one-half undivided interest in the entire tract with his wife—who was a daughter of Sebron Crowley—owning a one-fourth undivided interest, and Keystone as vendee of A. C. Crowley owning the other one-fourth interest. In the year 1900 pursuant to a protracted agitation by M. F. Ballard for the purpose (as it appears from the record), by agree-

ment between Keystone and wife and M. F. Ballard and wife, the entire tract was divided into three parcels—one of them supposed to contain 43 acres; another one between 25 and 30 acres, and the small one between 11 and 15 acres, the latter of which it was agreed should be held by Mrs. Keystone, either as her dower or a part of it, and the larger, or 43 acre tract, was conveyed by Keystone and wife to M. F. Ballard. But prior to that time (and in 1899) A. C. Crowley sold to his step-father, Keystone, his undivided one-fourth interest in the entire Sebron Crowley tract. The 25 acre tract was taken possession of by Keystone and wife and they occupied it as long as they lived, both of them having died before the commencement of this action. It will, therefore, be perceived that all persons having an interest in the land were parties to the allotment or division in 1900—Keystone at that time being the owner of A. C. Crowley's inherited interest. In 1910 he reconveyed that tract to defendant A. C. Crowley—from whom he had obtained his undivided interest—and he (Crowley), according to the proof in this case, has claimed to own it from that time to the present.

For seven or eight years after he obtained deed to it from Keystone he and his family occupied and lived upon it, and after that period of occupancy he moved away and rented it to tenants. In the meantime he improved it by the erection of buildings, repairing others, and making other improvements, and according to his testimony and that of others he claimed to own it absolutely, listing it for taxation and paying taxes continuously thereafter, and which he was doing at the time of the filing of this action against him following the death of Mrs. Keystone, nee Crowley. There was no deed executed by Ballard and wife to Mr. Keystone at the time of the division or allotment made of the entire Crowley tract of land in 1900, conveying the land involved, for the reason, as stated by A. C. Crowley in his testimony, that M. F. Ballard at the time stated that there was no necessity for such a deed, since Keystone and his wife were then (and had been) in possession of that tract, and which reasons appear to have been acted on and accepted by them. At any rate, they, as we have seen, remained in possession of the tract—which is the only one involved here—and resided upon it, claiming to own it until its conveyance to A. C. Crowley in 1910, who has occupied it by himself or tenants continuously since then.

At the time of the division in 1900 there was a surveyed line made separating the involved tract from the rest of the Crowley tract, and a fence was later erected along that line, and we think the proof largely preponderates—even to the extent of clearly showing—that the parcel of land then allotted to Mr. Keystone was intended by the parties to be the one-fourth interest inherited by A. C. Crowley from his father and conveyed by him in 1899 to Keystone. It would serve no useful purpose to take up the testimony of each witness and to portray each circumstance and all of the conduct of the parties pointing to that conclusion. Suffice it to say that many facts and circumstances corroborate that view, one of which is that Keystone, before he made the reconveyance back to A. C. Crowley, deeded to a church 1 acre of land in the corner of the involved tract, and plaintiffs in this case do not seek to disturb that title. Another fact in the case is, that, unless the involved tract represents the one-fourth interest of A. C. Crowley, then that one-fourth interest in the entire Sebron Crowley tract has become lost in the shuffle, except the one-fourth aliquot part in the involved tract of 25 or 30 acres which plaintiffs admit is owned by A. C. Crowley; but his fourth of his inherited interest in the rest of his father's farm has become evaporated or absorbed somehow by someone. It was never conveyed to anyone by Mr. Keystone after he acquired it from A. C. Crowley, and when it was re-conveyed to Crowley by him the entire involved tract—supposed to represent the one-fourth interest inherited by A. C. Crowley from his father—was conveyed. The only fact in this case furnishing a foundation for this litigation is the failure of M. F. Ballard and wife to execute a deed to Mr. Keystone at the time of the allotment or parceling of the Sebron Crowley tract in 1900, but which, as we have seen, was not done at the suggestion of M. F. Ballard. He, in a way, denies having suggested the non-necessity of such a deed, and contends that the deed which Mr. and Mrs. Keystone executed to him for the larger 43 acre tract was only for the purpose of extinguishing Mrs. Keystone's interest therein as surviving widow of her husband. Therefore counsel for appellee emphasizes the fact that the deed so executed expressly conveys "all title and dower that we have to the following tract of land," etc. Counsel argues that the inserted excerpt from that deed clearly intended to convey and did convey only the dower interest of Mrs. Keystone. How-

ever, she and her husband executed that deed and it says that it conveyed "all title and dowry." So that it conveyed any dowry right that any of the grantors held in the land, as well as "all title" that any of them held thereto and which clearly conveyed a one-fourth undivided absolute interest in the conveyed land that was then owned by Mr. Keystone, the vendee of appellant.

The 15 acres alloted to the widow in the 1900 division was afterwards conveyed to M. F. Ballard by Mr. Keystone and wife, thus vesting in him and his wife 58 acres of the entire original Crowley tract (or three-fourths therein) with the remaining part (the one here involved) representing the other one-fourth undivided interest.

Because in the 1900 division no deed was executed by M. F. Ballard and wife to the involved tract,. A. C. Crowley relies on adverse possession by himself and his predecessor in title, Mr. Keystone. In combatting that contention counsel cite and rely on many cases from this court dealing with the question of adverse possession by a life tenant as against remaindermen; and also attention is called to cases which hold that the rights of remaindermen, as against the life tenant, does not accrue until after the death of the latter. But the principles announced in those cases do not apply under the facts of this case, since all of the remaindermen in interest participated in the 1900 division—they being M. F. Ballard and wife (owning in the aggregate of three-fourths interest in the entire original Crowley tract) and Mr. Keystone owning the other one-fourth interest with his wife entitled to a widow's interest therein. If the possession thereafter of the involved tract was adverse to the interest of all others therein, and if it continued under a claim of ownership to the boundaries of the tract thereafter for nearly 40 years, then the title became perfected by adverse possession. Our appraisement of the testimony convinces us of the correctness of that conclusion.

But counsel for appellees make this argument: "The question of adverse possession is a common law question for the jury and not an equitable question and the court in passing upon this, his judgment and finding should have the same effect as the verdict of a properly instructed jury, and the verdict would not be set aside unless the evidence preponderated heavily against the

plaintiff. For authority that it is a jury question see Moran v. Higgins, 40 S. W. 928, 19 Ky. Law Rep. 456; Ball v. Loughridge, 100 S. W. 275, 30 Ky. Law Rep. 1123; Le Moyne v. Meadors, 156 Ky. 832, 162 S. W. 526; Martin v. White, 177 Ky. 653, 197 S. W. 1079; Frye v. McKinley, 136 Ky. 31, 123 S. W. 321.'' The excerpt contains a correct principle governing this court in appeals from the verdicts of juries when the issue of adverse possession had been submitted to and passed upon by a jury. In each of the cases cited in the excerpt from brief the action was a common law one, or one where the issue of adverse possession was submitted to a jury for its determination, and not the advice of the chancellor. This case is essentially an equitable action. The petition is so styled, and it was practiced as such throughout. No suggestion was made for the submission of the common law issue to the jury, and the court, as a chancellor, passed upon the facts. The rule prevailing in this court in reviewing the findings of fact by a chancellor is, that if we entertain no more than a doubt as to the correctness of his findings his judgment will be approved. But if the testimony furnishes more than a doubt as to the correctness of his fact-findings, the judgment will be reversed. Cases so declaring that rule are too numerous to require the citation of any of them, since they are all one way, with none to the contrary. A late one is Fields v. Lewis, 275 Ky. 765, 122 S. W. (2d) 746.

Under that rule we are constrained to the conclusion that the court erred in holding that the occupancy of the involved tract of land after the 1900 division was not adverse to the interest or title (present or future) of all persons in and to the original Sebron Crowley tract. Therefore, it erred in adjudging that any of the plaintiffs owned any interest in the involved tract, and also erred in dismissing A. C. Crowley's cross petition. The judgment should have sustained the cross petition and dismissed plaintiff's petition—thereby adjudging A. C. Crowley to own the entire interest in the involved tract.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside, and to enter one in conformity with this opinion.